IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH A. ADAMS, | ) | CASE NO. 5:11CV00904 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHAEL J.ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Kenneth A. Adams ("Adams") seeks judicial review of the final decision of

Defendant Commissioner of Social Security ("Commissioner") denying his application for social

security disability benefits.  Doc. 1.  Plaintiff filed a Brief on the Merits on August 23, 2011

(Doc. 12), Defendant filed its Brief on October 24, 2011 (Doc. 15), and Plaintiff filed a Reply

Brief on October 27, 2011 (Doc. 16).[1]  This Court has jurisdiction pursuant to 42 U.S.C. §

405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and

Recommendation pursuant to Local Rule 72.2(b)(1).

The ALJ's analysis of Adams' Residual Functional Capacity ("RFC") is insufficient to

permit review by this Court because, while the ALJ recognized that Adams experiences panic

attacks, he failed to explain why he did not account for such attacks in the RFC.  Accordingly,

the undersigned recommends that the decision of the Commissioner be **REVERSED** and this

case be **REMANDED** for further proceedings.

---

[1] Plaintiff also filed a Brief on the Merits on August 29, 2011.  Doc. 13.  Plaintiff did not seek leave to file his
"second" Brief nor did he provide any reason filing a "second" Brief.  Leave was never granted.  Accordingly, in
reaching the recommendation contained herein, the undersigned has reviewed and  considered only Plaintiff's
originally filed Brief on the Merits (Doc. 12), Plaintiff's Reply Brief (Doc. 16), and Defendant's Brief (Doc. 15).

## I.  Procedural History

Adams filed his application for Disability Insurance Benefits on December 22, 2007.[2] Tr. 28, 33. The application alleged a disability onset date of December 6, 2007.  Tr. 33, 69, 78. Adams alleged disability based on heart problems, anxiety, panic attacks and depression.  Tr. 46, 52, 82.  After initial denial by the state agency (Tr. 28-29, 46-49, 52-54, 56-57), Adams requested a hearing (Tr. 59-60), and an administrative hearing was held before Administrative Law Judge Peter Beekman ("ALJ") on May 24, 2010.  Tr. 7-23.

In his July 7, 2010, decision (Tr. 30-45) the ALJ determined that Adams had not been under a disability.  Tr. 40.  On July 18, 2010, Adams requested review of the ALJ's decision by the Appeals Council.  Tr. 26-27.  On April 6, 2011, the Appeals Council denied Adams' request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-6.

## II. Evidence

### A.  Personal and Vocational Evidence

Adams was born on October 20, 1952 (Tr. 10, 69), and was fifty-seven years old at the time of the hearing.  Tr. 10.     When Adams was nine years old, he was in an accident, unconscious for about 2 ½ months, and had brain surgery.  Tr. 11.   He has a high school education plus two years of college.  Tr. 10.  He was last employed in December of 2007 as a greeter at Walmart.  Tr. 10-11.  He has also worked in the past as a tire technician and sales attendant.  Tr. 18-20.   Although not employed at the time of the hearing, Adams was

---

[2] Both parties indicate in their Briefs that Adams filed his application on December 27, 2007, but the ALJ found that the application filing date was December 22, 2007.  Tr. 33.  Both dates are supported by the record.  The "Disability Determination and Transmittal" reflects a December 22, 2007, filing date (Tr. 28) and the "Application Summary for Disability Insurance Benefits" reflects an initial filing date of December 27, 2007.  Tr. 69.  Since neither party has objected to the ALJ's finding as to the filing date, that date, December 22, 2007, is accepted for purposes of this Report and Recommendation.

volunteering at Robinson Memorial Hospital and had been doing so since approximately July 2007.  Tr. 15-16, 304.  His volunteer work involved folding linens in the Central Sterile department at the hospital for about 3 ½ hours, two days per week.  Tr. 15, 304.

### B.  Medical Evidence

#### 1.      Treating psychologists/psychiatrists

Beginning June 7, 2001, John A. Kasper, M.D., a psychiatrist, treated Adams for anxiety, depression and panic.  Tr. 230-255.  Dr. Kasper continued to treat Adams through November 7, 2005.  Tr. 230-255.  Adams' panic attacks had been mistaken for cardiac problems.  Tr. 235, 265.

Thereafter, Adams' primary care physician's notes reveal ongoing management care for his anxiety and depression.[3]  Tr. 379-394, 409-412.

Beginning in 2008, psychologist Cathy Kane began to treat Adams for his anxiety, depression and panic.  Tr. 295, 299, 343-371.  Dr. Kane continued to treat Adams through 2010. Tr. 395-408.  Dr. Kane's treatment notes show on and off good and bad days and varying reports of panic attacks.  For example, the July 7, 2008, treatment notes indicate not too many anxiety episodes (Tr. 345); July 17, 2008, treatment notes indicate "felling pretty well" (Tr. 347); August 7, 2008, treatment notes indicate "pretty well" (Tr. 348); August 21, 2008, treatment notes indicate that Adams had a panic attack which was the first in a long time (Tr. 349); September 4, 2008, treatment notes indicate that Adams had had four panic attacks (Tr. 350); October 30, 2008, treatment notes indicate mild depression, pretty good (Tr. 357); January 6, 2009, treatment notes indicate that Adams was tearful (Tr. 363); January 22, 2009, treatment notes indicate more good days than bad days (Tr. 364); February 25, 2009, treatment notes indicate Adams had been

---

[3] Primary Care Associates of Northeast Ohio, Inc.

doing well – no panic attacks (Tr. 366); March 26, 2009, treatment notes indicate Adams not too

good (Tr. 368);  April 2, 2009, treatment notes indicate crying at work (Tr. 371); May 14, 2009,

treatment notes indicate Adams doing pretty good (Tr. 403);  June 4, 2009, treatment notes

indicate bad episode (Tr. 402); June 25, 2009, treatment notes indicate no new panic attacks at

work, but one while watching television and one while in car with ex-wife (Tr. 401); July 14,

2009, treatment notes indicate not too bad; good days and bad days; still some crying spells (Tr.

400); October 30, 2009, treatment notes indicate Adams doing pretty well – bad and good days

(Tr. 396); February 18, 2010, treatment notes indicate increase in crying spells (Tr. 405); March

18, 2010, treatment notes indicate Adams not too bad (Tr. 404).   Additionally, during Adams'

December 3, 2009, visit, Dr. Kane noted that she addressed reducing the frequency of visits

because of Adams improved functioning and coping.  Tr. 406.

     In addition to her treatment notes, Dr. Kane completed three different

assessments/statements.  Tr. 289-292, 293-301, 420-425.  Her first statement, a Medical Source

Statement (Mental), was completed on May 17, 2008.  Tr. 289-292.  Dr. Kane rated[4] Adams'

abilities in the following functional categories: (1) understanding and memory; (2) sustained

concentration and persistence; (3) social interaction; and (4) adaption.  Tr. 291-292.  In all

categories, Dr. Kane noted limitations of varying degrees.  Tr. 291-292.  In the section entitled

"General Functional Capacity Assessment," she stated in part "I have not conducted an

evaluation of patient's work function ability.  Contact with Mr. Adams' neuropsychologist may

---

[4] The rating scale in the Medical Source Statement (Mental) was defined as : 1 – able to perform designated task or
function with no observable limits; 2- able to perform designated task or function, but has or will have noticeable
difficulty (distracted from job activity) no more than 10 percent of the work day or work week (i.e., one hour or
less/day or one- half day or less/week); 3 – able to perform designated task or function, but has or will have
noticeable difficulty (distracted from job activity) from 11-20 percent of the work day or work week (i.e., more than
one hour/day or more than one-half day/week); 4- able to perform designated task or function, but has or will have
noticeable difficulty (distracted from job activity) more than 20 percent of the work day or work week (i.e., more
than one hour and up to two hours/day or one-half to one day/week); and 5 – not able to perform designated task or
function on regular, reliable, and sustained schedule.  Tr. 291.

provide more accurate information on memory and concentration and decision-making
capabilities.  With accommodations of rest pds. [periods] and a plan if he becomes panicky, Mr.
Adams can probably adapt to low stress, predictable work demand well." Tr. 292.

Then, on June 20, 2008, Dr. Kane completed a "Mental Status Questionnaire" and "Daily
Activities Questionnaire." Tr. 295-299.  She indicated that Adams' impairment had worsened
since the fall of 2007.  Tr. 296.  Dr. Kane stated that Adams' conversation and speech were
tentative and halting at times.  Tr. 295.  She also indicated he was anxious; often tearful with
intermittent passive suicidal ideation; easily confused, overwhelmed, self critical and panicked if
overwhelmed.  Tr. 295.  Dr. Kane noted Adams exhibited some problems with concentration,
understanding, following directions, memory and dependency but noted that his insight and
judgment were good/fair and he does show persistence.  Tr. 295-296.  Regarding his social
interaction, Dr. Kane indicated that Adams was "very eager to please, passive – easily
overwhelmed, self critical, pleasant." Tr. 296.  As to his ability to react to pressures in work
settings or elsewhere, Dr. Kane indicated that Adams "[d]oes not react well to pressure – cries,
has panic attacks, easily overwhelmed.  Should be able to perform simple, routine tasks.  Needs
breaks and rests." Tr. 296.  As examples of things that might prevent Adams from completing
work activities for a usual work day or work week, Dr. Kane stated that he would need "rests,
breaks," and is "easily overwhelmed." Tr. 298.  She also stated that Adams does not do well
with changes and he requires support.  Tr. 298.

On May 5, 2010, Dr. Kane completed a second Medical Source Statement (Mental).  Tr.
421-422.  As in her May 17, 2008, Medical Source Statement (Mental), Dr. Kane rated[5] Adams'
abilities in the following functional categories: (1) understanding and memory; (2) sustained

---

[5] See FN 4 setting forth the description of the rating scale in the Medical Source Statement (Mental). Tr. 421.

concentration and persistence; (3) social interaction; and (4) adaption.  Tr. 421-422.  Dr. Kane noted limitations of varying degrees.[6]  Tr. 421-222.  In this 2010 Medical Source Statement (Mental), Dr. Kane indicated in the "General Functional Capacity Assessment" section that Adams "experiences frequent periods of distress/crying and or/panic that may interrupt longer durations of work.  He is very kind and willing to please, but becomes easily overwhelmed.  He does not adapt well to change."  Tr. 422.

2.    **Consultative physician**

On April 2, 2008, Sudhir Dubey, Psy.D., conducted a consultative examination and issued an evaluation report.  Tr. 257-261.  During the examination, Adams reported symptoms of panic and anxiety about once every five days for the past two years.  Tr. 260.  Dr. Dubey diagnosed Adams with anxiety disorder, not otherwise specified, and assessed a GAF score of 65.[7]  Tr. 260.  Dr. Dubey opined that Adams' ability to relate to others, including fellow workers and supervisors, and his ability to withstand stress and pressure associated with day-to-day work activity were not impaired.  Tr. 261.  He opined that Adams' ability to maintain concentration, persistence and pace to perform simple repetitive tasks was mildly impaired, and Adams' ability to understand, remember and follow instructions was moderately impaired.  Tr. 261.

---

[6] Without explanation, Dr. Kane provided more than one rating in certain areas, i.e., ability to sustain ordinary routine without special supervision; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basis standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation.  Tr. 421-422.

[7] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34.  A GAF score between 61 and 70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  *Id.*

3.      **State agency reviewing physician**

On April 16, 2008, state agency reviewing physician Karla Voyten, PhD., completed a
Mental RFC Assessment and a Psychiatric Review Technique.  Tr. 263-266.  Dr. Voyten found
moderate limitations in only three out of the twenty categories rated in the Mental RFC.  Tr. 263-
264.  The areas in which Dr. Voyten rated Adams to be moderately limited were: (1) the ability
to understand and remember detailed instructions; (2) the ability to carry out detailed
instructions; and (3) the ability to complete a normal workday and workweek without
interruptions from psychologically based symptoms and to perform at a consistent pace without
an unreasonable number and length of rest periods.  Tr. 263-264.  In eight categories, she found
that Adams was not significantly limited and, in the remaining nine categories, she found no
evidence of limitation.  Tr. 263-264.

In her Psychiatric Review Technique, Dr. Voyten found that Adams suffered from
depression and anxiety disorder not otherwise specified.  Tr. 270, 272.  She found mild
limitations in Adams' activities of daily living and in his ability to maintain social functioning;
moderate limitations in Adams' ability to maintain concentration, persistence or pace; and no
episodes of decompensation.  Tr. 277

**C.  Testimonial Evidence**

**1.      Adams' Testimony**

Adams was represented by counsel and testified at the administrative hearing.  Tr. 10-19.
He worked as a tire technician at Goodyear Tire for over thirty years; he worked as a greeter at
Walmart; and he worked as a shoe department sales attendant.  Tr. 11, 18-19.  He described his
panic attacks as causing him to get anxious and start sweating profusely and requiring him to sit

down to get control of himself.  Tr. 11.  He testified that he has no warning that a panic attack is coming.  Tr. 13, 16.  He stated that he usually calms down within 15-20 minutes of the onset of a panic attack.  Tr. 16.  He indicated that being around crowds bothers him and he gets anxious just going into grocery stores.  Tr. 12.  He stated that, on December 6, 2007, his alleged disability onset date, he was working at Walmart as a greeter and all of sudden he felt as if he was going to pass out and he had to be transported to the hospital.  Tr. 12-13.  He has thought about suicide but never attempted suicide.  Tr. 17.  He indicated that he has had heart problems; in 2004, he had two stents implanted.  Tr. 13.  On a typical day, he watches television, goes to doctor's appointments and walks depending on the weather.  Tr. 13-14.  He can walk about 20 minutes before having to take a break.  Tr. 16.  He has good and bad days.  Tr. 14.   He stated that he has a few friends with whom he visits and he visits with his mother about once a week.  Tr. 17.  He noted that his ex-wife is the caregiver for his twenty three-year-old daughter who has cerebral palsy, but also stated that worrying about his daughter puts a lot of pressure on him.  Tr.  14.

### 2.    Vocational Expert's Testimony

Vocational Expert Barbara E. Burk ("VE") testified at the hearing.  Tr. 18-22.   The VE described Adams' past relevant work as a tire technician, people greeter and sales attendant.[8] The VE described the tire technician job as a skilled job customarily performed at the medium level, but testified that Adams performed the work at the very heavy level.  Tr. 18.  She described the people greeter job at Walmart as a semiskilled job generally performed at the light level, but testified that, because Adams had stated that he lifted up to 50 pounds, performed the

---

[8] The ALJ elicited testimony from Adams regarding his sales attendant job to ensure that there was sufficient information regarding that job.  Tr. 18-19.  Adams testified that his sales attendant job was in a shoe department.  Tr. 19.

job at the medium level.  Tr. 18.  The VE described the sales attendant job as an unskilled, light
level job.[9]  Tr. 18-19.

The ALJ asked the VE whether the following hypothetical individual would be able to
perform any of Adams' past relevant work: a fifty-seven year old male who is able to lift/carry
50 pounds occasionally and 25 pounds frequently; stand six out of eight hours and walk six out
of eight hours; sit six out of eight hours; can frequently push/pull and foot pedal; can
occasionally climb a ramp or stairs; cannot climb a ladder, rope or scaffold; can frequently
balance; can occasionally stoop, kneel, crouch and crawl; with no manipulative, visual or
communication limitations; should avoid unprotected heights; should do no complex tasks but
can do simple routine tasks with few changes; no work involving high production quotas or piece
rate work; and no work involving arbitration, negotiation or confrontation.  Tr. 20-21.  The VE
testified that the described hypothetical individual would be able to do the work of a sales
attendant.  Tr. 21.

The ALJ then asked whether the VE's testimony would change if the described
hypothetical individual were limited to lifting 20 pounds occasionally and 10 pounds frequently.
Tr. 21.  The VE testified that the second described hypothetical individual would also be able to
perform work as a sales attendant.  Tr. 21.

Adams' attorney then questioned the VE and asked whether the described individual
would be able to perform any of Adams' past work if the individual had to take unscheduled
breaks at least once every four hours, and sometimes more frequently, upon the onset of a panic

---

[9] As defined in the DOT, a sales attendant "[p]erforms any combination of [the] following duties to provide
customer service in [a] self-service store: Aids customers in locating merchandise.  Answers questions from and
provides information to customer about merchandise for sale.  Obtains merchandise from stockroom when
merchandise is not on floor.  Arranges stock on shelves or racks in sales area.  Directs or escorts customer to fitting
or dressing rooms or to cashier.  Keeps merchandise in order.  Marks or tickets merchandise. Inventories stock."
DOT 299.677-010.

attack.  Tr. 21-22.  The VE testified that such an individual would not be able to do Adams' past work and there would not be any other jobs available to such an individual.  Tr. 22.

### D.  Lay Evidence

On January 20, 2009, Stephanie Montgomery, Manager of Volunteer Services at Robinson Memorial Hospital where Adams volunteered, submitted a letter setting forth observations of Adams based on his volunteer work at the hospital.  Tr. 304.  She indicated that, based on the hospital's understanding of Adams' history of panic attacks, he was assigned to work in the Central Sterile department because, as Ms. Montgomery stated it was a "safe zone," i.e., "he knows all of the staff and fellow volunteers, and has little interaction with the public . . ."  Tr. 304.  Based on her conversations with Adams and with the Central Sterile staff, she stated further that she "would estimate that he experiences at least one and often more than one panic attack during each shift that he works.  Occasionally, the severity of the attack has warranted us sending Mr. Adams home for the day to recuperate."  Tr. 304.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1.  If the claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy.  *Id.*

## IV. The ALJ's Decision

In his July 7, 2010, decision, the ALJ made the following findings:

1.  Adams met the insured status requirements through December 31, 2012. Tr. 35.

11

2.      Adams had not engaged in substantial gainful activity through December 6, 2007.  Tr. 35.

3.      Adams had severe impairments of cardiomyopathy and anxiety disorder. Tr. 35-37.

4.      Adams did not have an impairment or combination of impairments that met or medically equaled a Listing.[10] Tr. 36-37.  The ALJ considered Listing 4.00 and 12.06.  Tr. 36-37.

5.      Adams had the residual functional capacity ("RFC") to perform medium work, with certain restrictions: he can lift and carry fifty pounds occasionally and twenty-five pounds frequently; he can sit, stand and/or walk for six hours of an eight hour day; he can frequently push or pull, as well as frequently use a foot pedal; he is able to occasionally climb a ramp or stairs, but is precluded from climbing ladders, ropes or scaffolds; he can frequently balance and occasionally stoop, kneel, crouch or crawl; he must avoid unprotected heights; he is able to perform simple, routine tasks and low stress work that involves few changes; he is precluded from work involving high production quotas or piece rate work, as well as work involving arbitration, confrontation or negotiation.  Tr. 37-39.

6.      Adams was capable of performing past relevant work as a sales attendant. Tr. 39-40.

Based on the foregoing, the ALJ determined that Adams had not been under a disability from December 6, 2007, through July 7, 2010, the date of the ALJ's decision.  Tr. 40.

## V. Parties' Arguments

### A.      Plaintiff's Arguments

Adams argues that the ALJ did not articulate valid reasons for discrediting his treating psychologist, Dr. Cathy Kane.  Doc. 12, p. 12-15.  He argues that the ALJ did not properly consider Volunteer Services Manager Ms. Montgomery's statement regarding Adams' panic attacks and that the ALJ did not articulate valid reasons for discrediting Adams.  Doc. 12, p. 15-

---

[10] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

18.   In addition, Adams argues that the ALJ should have included in the RFC a limitation to account for the  unscheduled breaks he takes as a result of his panic attacks.  He contends that including such a limitation would preclude a finding that he could  return to his past work as a sales attendant.  Doc. 12, p. 18.  Finally, he asserts that the ALJ's hypotheticals to the VE and the VE's responses thereto are not substantial evidence supporting the ALJ's decision because the ALJ failed to include the ALJ's own "low stress" RFC finding in the hypotheticals.  Doc. 12, p. 18-19.

**B.**     **Defendant's Arguments**

In response, the Commissioner argues that substantial evidence supports the ALJ's analysis of Dr. Kane's medical source opinions when formulating Adams' RFC.  Doc. 15, p. 11-15.  The Commissioner also asserts that the ALJ's findings and ultimate decision are also supported by the consultative psychologist and state agency reviewing psychologists' opinions, Adams' volunteer work, and Adams' activities of daily living.  Doc. 15, p. 15.  The Commissioner further argues that substantial evidence supports the ALJ's decision that Adams was not disabled because he retained the capacity to perform his past relevant work as a sales attendant.  Doc. 15, p. 15-18.

### VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).  Even if substantial evidence or, indeed, a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## A.   The ALJ did not sufficiently articulate his basis for not accommodating Adams' panic attacks in the RFC.

Plaintiff asserts that the ALJ's credibility analysis of Adams' statements regarding his panic attacks and the ALJ's consideration and treatment of Ms. Montgomery's statement[11] are flawed.  These arguments are best reviewed in connection with a review of the ALJ's RFC analysis rather than as independent arguments. When these matters are looked at in connection with the ALJ's RFC analysis, it is clear that further explanation by the ALJ is needed in order to enable a reviewing court to assess whether the Commissioner's decision is supported by substantial evidence.

---

[11]Adams' argument regarding the ALJ's consideration and treatment of Ms.Montgomery's statement is based in part on Social Security Ruling 96-5p and case law requiring an ALJ to take lay evidence into consideration. Doc. 12, p. 15-16.  There is no dispute, however, that the ALJ considered the lay evidence of Ms. Montgomery.  The ALJ specifically discussed Adams' volunteer work and Ms. Montgomery's statement.  Tr. 39.   Unlike the ALJ in *Van Buskirk*, the ALJ here did in fact consider and discuss Ms. Montgomery's statement.  Tr. 39. *Van Buskirk v. Astrue*, 2010 WL 3365929 (S.D. Ohio 2010).  Thus, to the extent that Adams' argument is based on a failure to consider Ms. Montgomery's statement, it is without merit.

The responsibility for determining a claimant's residual functional capacity rests with the ALJ.  20 C.F.R. § 404.1546(c).  "[T]he adjudicator's assessment of an individual's RFC may be the most critical finding contributing to the final determination or decision about disability." SSR No. 96-5p, 1996 SSR LEXIS 2, *14 (July 2, 1996).  An RFC assessment is "based on consideration of all relevant evidence in the case record, including . . . evidence, such as observations of lay witnesses . . ."  *Id.* at * 12.   While an ALJ is not required to incorporate all such evidence into the RFC, an ALJ is required to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  SSR No. 96-8p, 1996 SSR LEXIS 5, * 19 (July 2, 1996).  Additionally, it is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant, and such credibility findings are entitled to great deference.[12] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Notwithstanding the foregoing, the ALJ's RFC analysis in this case is flawed.  Although the ALJ found that Adams suffered from anxiety disorder (Tr. 35) and accepted and acknowledged that Adams experiences panic attacks (Tr. 39), he did not explain why he did not account for the panic attacks in the RFC.  Adams works three and one-half hour volunteer shifts twice a week at Robinson Memorial Hospital. Tr. 15.  He testified that he has a panic attack once in every shift and that he has to take unscheduled 15-20 minute breaks when he has an attack. Tr. 16.   His volunteer supervisor, Ms. Montgomery, submitted a statement that Adams' experiences "at least one and often more than one panic attack during each shift he works" and

---

[12] If the ALJ rejects a claimant's testimony as not being credible, the ALJ must state his reasons so as to make obvious to the individual and to any subsequent reviewers the weight given to the individual's statements and the reason for that weight.  *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); SSR 96-7p, 1996 SSR LEXIS 4.

that he occasionally has to be sent home after an attack.  Tr. 304.  The ALJ did not explain why he did not include an RFC limitation to account for the unscheduled breaks resulting from Adams' panic attacks.  While this Court could speculate as to the ALJ's reasoning, such speculation would be inappropriate.[13]  Further, while as discussed *infra*, the ALJ is not required to rely on VE testimony in a case such as this where the outcome is determined at Step Four, the VE testimony in this case demonstrates the materiality of an assessment of the panic attacks to the RFC determination.  The VE testified that an individual who experiences a panic attack every four hours could not obtain employment as a sales attendant and that no other jobs would be available to such an individual. Tr. 21-22. Without an explanation from the ALJ as to how he reached his decision not to include a limitation to address Adams' panic attacks, the Court is unable adequately to review his RFC determination. The ALJ's failure to follow the Commissioner's rules, i.e., by failing to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved" prevents this Court from conducting an evaluation as to whether the RFC is supported by substantial evidence.  SSR No. 96-8p, 1996 SSR LEXIS 5 at *19; *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 939-940 (6th Cir. 2011)  (citing *Blakely v. Comm'r of Soc Sec*, 581 F.3d 399, 407 (6th Cir. 2009)).  Accordingly, this case should be remanded for further proceedings to clarify the resolution of questions regarding the panic attacks in relation to the RFC.

---

[13] For example, it may be that the ALJ concluded that Adams' testimony and Ms. Montgomery's statement as to the frequency of Adams' panic attacks were not credible based on his review of the entire record. However, the ALJ did not offer that explanation and the Court may not guess as to his reasoning.

**B.**　　**The ALJ properly applied the treating physician rule to Dr. Kane's opinion.**

Adams argues that this case should be remanded because the ALJ did not validly articulate his reasons for not providing controlling weight to treating psychologist Dr. Kane's opinion.   Doc. 12, p. 12-15.  The Commissioner argues that the there is substantial evidence to support the ALJ's discussion not to provide controlling weight to Dr. Kane's opinion.  Doc. 15, p. 11-15.

Under the treating physician rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).  The Commissioner's regulations impose a clear duty always to give good reasons for the weight given to treating source opinions.  *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(d)(2)).  "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."   *Cole*, 661 F.3d at 937 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996)) (internal quotations omitted).

Here, the ALJ gave the following reasons for not giving Dr. Kane's opinion much weight: (1) her stated opinions are not consistent with one another; and (2) her stated opinions are not consistent with her own treatment notes.  Tr. 39.  The ALJ further noted that Dr. Kane "even advised Mr. Adams to reduce his counseling sessions to even less than once per month as the frequency of his attacks was reduced."  Tr. 39.

The ALJ's stated reasons for his decision not to provide controlling weight to Dr. Kane's opinion are supported by substantial evidence.  In her May 5, 2010, assessment, Dr. Kane indicated that Adams "would experience frequent periods of distress/crying and or panic that may interrupt longer periods of work" and opined that Adams does not adapt well to change.  Tr. 422.  Yet, in her May 17, 2008, assessment, Dr. Kane opined that "[w]ith accommodations of rest pds. and a plan if he becomes panicky, Mr. Adams can probably adapt to low stress, predictable work demand well." Tr. 291-292.  In addition to the inconsistencies noted by the ALJ between Dr. Kane's different assessments, her May 5, 2010, assessment included multiple inconsistent ratings within the report itself.  Tr.  421-422.  For example, when Dr. Kane rated Adams' ability to ask simple questions or request assistance, she provided two different ratings that were at opposite ends of the spectrum, i.e., she indicated no observable limitations but also indicated that he would not be able to perform the designated task or function.  Tr. 422, Question C-13.  Similar inconsistent ratings are found in Questions B-8, C-14, D-17, D-18, and D-19.  Tr. 421-422.

There is also substantial evidence to support the ALJ's decision that Dr. Kane's opinion is not supported by her treatment notes.  While the treatment notes reflect evidence of panic attacks and crying spells (Tr. 349, 350, 363, 368, 371, 400, 401, 402, 405), the treatment notes also reflect good days and few panic attacks. Tr. 345, 347, 348, 357, 364, 366, 396, 400, 403.  Dr. Kane's treatment notes show that the frequency of Adams' panic attacks were decreasing (Tr. 401) and that Adams' panic attacks and crying were "rare" (Tr. 406).  Moreover, in December 2009, Dr. Kane indicated that the frequency of Adams' visits could be reduced because his functioning and coping were improving. Tr. 406.  Adams points to Kane's March 18, 2010, treatment notes as an example of how the ALJ's reasoning and findings are flawed.

Doc. 12, p. 15.  He argues that the March 18, 2010, treatment notes document increased crying spells.  Doc. 12, p. 15; Tr. 404.  However, a review of those treatment notes also reveals that Adams was "not too bad," "handles very well episodes of cry/dizzy well," "function – good at home."  Tr. 404.

Based on the foregoing, there is substantial evidence to support the ALJ's finding that Dr. Kane's opinions were not consistent with one another or with her treatment notes.  Accordingly, even though Adams has pointed to some evidence demonstrating consistency among the various opinions offered by Dr. Kane and between her opinions and her treatment notes,[14] remand is not appropriate on these grounds.  *See Jones*, 336 F.3d at 477 (even if there is substantial evidence to support a claimant's position, the Commissioner's decision is not subject to reversal as long as substantial evidence also supports the conclusion reached by the ALJ).

## C.    The ALJ's Flawed RFC analysis prevents this Court from determining whether the ALJ's finding that Adams can return to his past work is supported by substantial evidence.

At Step Four, the ALJ determined that Adams is capable of performing his past relevant work as a sales attendant.  Tr. 39-40.  In reaching that determination, the ALJ cited the VE's testimony that, based on the hypothetical question posed by the ALJ, an individual with the characteristics described would be able to perform the duties of sales attendant.  Tr. 39-40.  The ALJ also stated, in support of his Step Four determination "[i]n comparing Mr. Adams' residual functional capacity with the physical and mental demands of this work, I find that Mr. Adams is able to perform it both as generally and actually performed."  Tr. 40.  Adams asserts that this Step Four determination is not supported by substantial evidence because the ALJ relied on the

---

[14] Adams additionally argues in his Reply Brief (Doc. 16, p. 2-3) that the ALJ's decision is flawed because the ALJ ignored Adams' "bad" days and therefore did not consider all the evidence.  However, as reflected in the decision, the ALJ did not ignore evidence; the ALJ considered Dr. Kane's treatment notes wherein she reported frequent periods of distress, crying or panic.  Tr.  39.  Accordingly, this additional argument is without merit.

VE's testimony that was offered in response to an incomplete hypothetical, i.e., although the ALJ included a "low stress" limitation in the RFC, he did not include that limitation in the VE hypothetical.[15]  Doc. 12, p. 18-19.  In response, the Commissioner argues that, because the decision was a Step Four rather than a Step Five determination, VE testimony was not required. Doc. 15, p. 15-17.  Further, the Commissioner argues the decision is proper because the ALJ himself compared Adams' RFC to the demands of the sales attendant job.  Doc. 15, p. 15-17.   In Reply, Adams acknowledges that VE testimony is not required at Step Four.  Doc. 16, p. 4-5. However, Adams argues that here the ALJ chose to rely on VE testimony and that, when the ALJ stated that the VE's testimony was based on the "residual functional capacity set forth above," the ALJ misstated the record.  Doc. 16, p. 4-5.  Therefore, Adams argues, the case should be remanded.

The Commissioner is correct that VE testimony is not required at Step Four[16] and that the ALJ's Step Four determination was also based on the ALJ's own comparison of Adams' RFC to the demands of the sales attendant job. The ALJ's reliance in this case on the VE's testimony given in response to an incomplete hypothetical would be harmless error if the ALJ had sufficiently explained his RFC determination. However, because, as discussed *supra*, the ALJ's RFC analysis is incomplete, the undersigned cannot reach a determination as to whether the Step Four determination is supported by substantial evidence. Accordingly, for the reasons stated herein, this case should be remanded for further proceedings.

---

[15] Adams also argues that the ALJ did not incorporate limitations set forth by Dr. Kane and Ms. Montgomery into his RFC and therefore his Step Four determination is not supported by substantial evidence.  The Court has addressed these arguments *supra*.

[16] *See* 20 C.F.R. § 404.1560 (authorizing but not requiring VE testimony when determining whether a claimant can perform his or her past work).

## V.  Conclusion and Recommendation

For the foregoing reasons, the final decision of the Commissioner should be

**REVERSED** and this case **REMANDED** for further proceedings.[17]


Dated:  May 14, 2012

_____
Kathleen B. Burke
United States Magistrate Judge

## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[17] The recommendation to remand is not a determination by the undersigned that Adams is disabled.